**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| NATASCHA AABBOTT, individually, ) <br> and on behalf of others similarly situated, ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> MARTINDALE-HUBBELL, INC., ) <br> a Delaware corporation, ) <br> ) <br> *Defendant*. ) | **CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR STATUTORY DAMAGES UNDER THE TELEPHONE CONSUMER PROTECTION ACT (TCPA)**

1.   This action arises under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), a remedial statute enacted in 1991 in response to consumer outrage over the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). At various times, and on several instances within the four (4) year period prior to the filing of this complaint, Defendant, in an effort to drum up business and increase their bottom-line, sent or caused to be sent unsolicited calls to Plaintiff's cellular telephone using at automatic telephone dialing system ("ATDS") in violation of the TCPA.

2.   Among other things, the TCPA and its accompanying regulations prohibit telemarketers from making telephone solicitations to persons who have listed their telephone numbers on the national Do Not Call Registry, a database established to allow consumers to exclude themselves from telemarketing calls unless they consent to receive the calls in a signed, written agreement.

3. Plaintiff, Natascha Aabbott, is one of the millions of consumers who have listed telephone numbers on the Do Not Call Registry. Nevertheless, she has received several autodialed telemarketing sales calls and voicemails from Martindale-Hubbell.

4. At the time of these calls, Defendant Martindale-Hubbell knew it was flagrantly violating the TCPA in its effort to sell legal referral services. However, Defendant failed to take effective action to stop the violations, and instead gratefully accepted the new business it generated through illegal means.

5. Accordingly, Plaintiff, alleges as follows upon personal knowledge as to herself, her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call made in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

7. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because

Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant placed the same class complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

## PARTIES

8. Plaintiff, Natascha Aabbott, ("Plaintiff") is a natural person who at all times relevant to this action is and was a resident of Miami-Dade County, Florida.

9. Defendant, Martindale-Hubbell, Inc., ("Defendant") is a Delaware corporation whose principal address is 121 Chanlon Road, Suite 110, New Providence, NJ 07974 and whose registered agent for service of process is The Prentice-Hall Corporation System, Inc., 251 Little Falls Drive, Wilmington, DE 19808. Defendant directs, markets, and provides its business activities throughout the United States, including the State of Florida.

10. Whenever in this complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's affiliates, subsidiaries, officers, directors, vice-principals, agents, sub-agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's affiliates, subsidiaries, officers, directors, vice-principals, agents, sub-agents, servants, or employees.

## AN OVERVIEW OF THE TCPA

11. The TCPA was enacted more than twenty (20) years ago to regulate the

explosive growth of telemarketing, which Congress recognized as a nuisance and an intrusive invasion of privacy.

12. To demonstrate a violation of the TCPA, the Plaintiffs need only show that Defendant called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice. *Breslow v. Wells Fargo Bank, NA*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012).

13. In 2012, the FCC issued an order tightening the restrictions for automated *telemarketing* calls, requiring "prior express *written* consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis added).

14. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent.... and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

15. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. See *Golan v. Veritas Entm't, LLC,* 788 F.3d 814, 820 (8th Cir. 2015).

16. Furthermore, consumers who do not want to receive telemarketing calls may

indicate their preference by registering their telephone numbers on the national Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2). According to the Federal Trade Commission, the Registry, which was established in 2003, currently has over 229 million active registrations.[1] During 2017, there were approximately 7.1 million complaints to the FTC.[2]

17. A person whose number is on the Registry and has received more than one telephone solicitation within any twelve-month period by or on behalf of the same entity in violation of the TCPA is entitled to actual or statutory damages.

18. The Do Not Call Registry database of "residential telephone subscribers" who object to receiving telephone solicitations also applies to cellular telephone numbers.[3] *Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014 (2003). See 47 U.S.C. §227(c)(1), (3).

19. These registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator. *Id*.

20. Because a telephone subscriber listed on the Registry must take an affirmative step to register his or her number, a telemarketer who wishes to call a person listed on the Registry must take a similarly affirmative step, and must obtain the registrant's signed, written agreement to be contacted by the telemarketer. *Id.* § 64.1200(c)(2)(ii). The written agreement

---

[1] Source: https://www.ftc.gov/policy/reports/policy-reports/commission-staff-reports/national-do-not-call-registry-data-book-fy-3 (Last Accessed: November 1, 2018).

[2] Source: https://www.consumer.ftc.gov/blog/2017/12/whats-national-do-not-call-registry (Last Accessed: November 1, 2018).

[3] Source: https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list (Last Accessed: November 2, 2018).

must also include the telephone number to which the calls may be placed. *Id*.

21.     Telemarketers who wish to avoid calling numbers listed on the Registry can easily and inexpensively do so by "scrubbing" their call lists against the Registry database. The scrubbing process identifies those numbers on the Registry, allowing telemarketers to remove those numbers and ensure that no calls placed to consumers who opt-out of telemarketing calls.

22.     To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. See 16 C.F.R. § 310.4(b)(3)(iv).

23.     The TCPA also prohibits any entity from initiating more than one telephone call to a person within any twelve (12) month period when that person previously stated that they do not wish to receive telephone calls by or on behalf of the seller whose goods or services are being offered. 47 U.S.C. § 227(c)(5); *see also* 16 C.F.R. § 310.4(b)(iii)(A).

24.     The TCPA creates a private right of action for affected consumers, and allows them to recover the greater of their actual monetary loss or up to $500 per call for each violation. 47 U.S.C. § 227(b). It also allows the district court to increase the award up to treble statutory damages if it finds the defendant's violation was willful or knowing. *Id*. at 1318. *See also Mims,* 132 S. Ct. at 746.

## FACTUAL ALLEGATIONS

25.     Defendant claims to be an information services company for the legal profession, and the #1 source for new clients.[4]

---

[4] Source: https://www.martindale.com/marketyourfirm/ (Last Accessed: November 1, 2018).

26. In order to discover potential business leads, Defendant is believed to employ various means of scraping numbers from various state bar websites across the country and other legal websites to identify the telephone numbers of potential recipients of its legal services. The names and telephone numbers of potential clients are then compiled into lists and then loaded into an automatic dialing system, which, without human intervention, places calls to potential clients.

27. Upon information and belief, Defendant maintains an overseas boiler-room operation call center staffed by agents who attend to calls placed by an automatic telephone dialing system.

28. At all times relevant herein, Plaintiff exercised sole dominion and control over the cellular telephone to which the alleged violative telemarketing calls were placed; the cellular telephone number, \*\*\*-\*\*\*-1886.

29. Defendant's calls to Plaintiff featured a few seconds of silent "dead air" before Plaintiff heard a human voice, which demonstrates that Defendant placed these calls using a predictive dialer (which is an automatic telephone dialing system within the scope of the TCPA).

30. The FCC has specifically ruled that a *predictive dialer* falls within the meaning and statutory definition of "automatic telephone dialing equipment" within the TCPA. *2003 TCPA Order,* 18 FCC Rcd 14092-3 at ¶ 133. Moreover, federal courts have consistently held that as a matter of law a *predictive dialer* is a type of automatic telephone dialing system. *See generally, Griffith v. Consumer Portfolio Serv., Inc.*, No. 10-c-2697 (N.D. Ill. Aug. 16, 2011).

31. Beginning in mid-2018, Plaintiff began receiving unsolicited telemarketing calls to her cellular telephone number ending in "1886" from an unknown number. When Plaintiff

connected with a live agent after a few seconds of silent "dead air", an agent with an accent began to advertise a sales pitch for Martindale-Hubbell and/or Lawyers.com products and services.

32. On September 11, 2018, Plaintiff received a voicemail from the number (908) 665-3874. The voicemail identified the caller as Lance on behalf of Martindale-Hubbell and/or Lawyers.com.

33. Beginning on September 13, 2018, Plaintiff also began receiving marketing e-mails from Defendant. By way of example, on September 18, 2018, Plaintiff received an email from an individual named Lance Cherisier which stated, "I am your local Lawyers.com rep here at Martindale-Hubbell serving Hallandale, FL", and that he would like to discuss Plaintiff's unclaimed Lawyers.com profile. Mr. Cherisier's signature block identifies him as a Regional Law Firm Marketing Specialist for Lawyers.com and Martindale-Hubbell. His direct phone number in his signature block is (908) 665-3874 and his e-mail address is lance.cherisier@martindale.com.

34. Plaintiff has received not less than six such e-mails from Defendant.

35. On September 19, 2018 Plaintiff received two (2) more unsolicited calls from Defendant.

36. Yet again, on October 4, 2018, Plaintiff received another call from Defendant from telephone number (908) 665-3874. The caller again identified himself as Lance and told Plaintiff that he is the individual who has been sending her the e-mails.

37. Upon information and belief, the number (908) 665-3874 belongs to Defendant. A Facebook page associated with the (908) 665-3874 telephone number identifies that it is associated with Defendant, Lawyers.com, Martindale-Nolo, and Ask A Lawyer.

38. Furthermore, the link contained on the Facebook page www.nationwidelawyerleads.com, once clicked, takes the consumer directly to the Martindale-Hubbell website which also contains the (908) 665-3874 number on the top right of the webpage.

39. Both the above referenced Martindale-Hubbell webpage and Facebook page contain the contact information for Lance Cherisier, which identify him as a lead generator and regional account manager for Martindale-Hubbell[5].

40. The calls constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, *i.e.*, Defendant's advertising and/or legal referral services.

41. Upon information and belief, Defendant's mass unsolicited telemarketing campaign coincided with additional nationwide marketing efforts through other mediums such as mass e-mail, as demonstrated by complaints on the internet.[6]

42. Although Plaintiff conducted business with Defendant several years ago and her cellular telephone number (which is a residential telephone line) is associated with her law practice; however, at no point in time did Plaintiff provide Defendant with her express consent to receive the subject telemarketing calls and voice messages. In fact, Plaintiff on several occasions advised Defendant not to call her anymore.

43. Upon information and belief, Defendant was systematically calling from a list of telephone number harvested from profiles listed on various state bar websites.

---

[5]Source: https://www.linkedin.com/in/lancecherisier (Last Accessed: November 1, 2018).

[6] Source: https://mockingbird.marketing/martindale-hubbell-aggressively-marketing-their-linkspam-network/ (Last Accessed: November 1, 2018).

44. Defendant's unsolicited automated calls caused Plaintiff actual and tangible harm, including invasion of her privacy, the tying up of her phone line, depletion of battery life leading to less availability of her telephone line in the case of an emergency, aggravation at receiving so many unsolicited calls and messages so frequently, annoyance, intrusion on seclusion, trespass, and conversion. Plaintiff suffered loss of time as a result of answering the calls and opening the missed call log, and answering back in attempts to have the calls cease. Defendant's call messages also inconvenienced Plaintiff and caused disruption to her daily life. *See Muransky v. Godiva Chocolatier, Inc.,* ("[T]ime wasting is an injury in fact" …. "[A] small injury… is enough for standing purposes"). She was disrupted by the call and had to stop what she was doing to answer her phone.

45. Defendant's violations of the TCPA were knowing and willful. Defendant intentionally "scraped" cellular telephone numbers from websites and webpages, with the intent to place mass telemarketing calls messages to the scraped numbers, without first obtaining the requisite consent to do so.

46. Moreover, Plaintiff's "1886" Number has been registered with the National Do-Not-Call Registry[7] since May 19, 2007. This reinforces the proposition that Defendant knew or should have known not to call Plaintiff for the purpose of marketing their services but did so anyway.

## CLASS ALLEGATIONS

47. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

---

[7] Source: https://www.donotcall.gov/confirm/conf.aspx

48. Plaintiff proposes to represent a class and sub-class of persons affected by Defendant's actions, described as follows:

### *The No Consent Class*
(i) All persons within the United States (ii) to whom Defendants, directly or through a vendor, (iii) made a call to their cellular phone (iv) using any automatic telephone dialing system or an artificial or prerecorded voice (v) within the four years preceding the filing of this Complaint, through the date of class certification, (vi) without first obtaining the prior express consent of the recipient of the call.

### *The No Written Consent Sub Class*
Plaintiff alleges a subclass of persons who fit within the above "No Consent" class, and for whom Defendant did not obtain a signed writing stating that the person consents to receive autodialed marketing calls.

### *The National Do Not Call List Class*
(i) All persons within the United States (ii) to whom Defendant, directly or through a vendor, (iii) placed more than one call to message to their telephone (iv) to individuals whose telephone numbers were listed on the national Do Not Call Registry (v) within any twelve-month time period (vi) and to whom at any time within the four years preceding the filing of this Complaint through the date of class certification (vi) to promote the sale of Defendant's goods or services.

### *The Internal Do Not Call List Class*
(i) All persons within the United States (ii) to whom Defendant, directly or through a vendor, (iii) placed more than one call to their telephone (iv) within any twelve-month period (v) within the four years prior to the filing of the original Complaint, (vi) where Defendant or a vendor's records show the person previously stated that he or she did not wish to received telephone calls from or on behalf of Defendant.

49. Excluded from the class is the Defendant, any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

50. The proposed class members are identifiable through phone records and phone number databases.

51. The potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

52. Plaintiff is a member of the classes, and the subclass.

53. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

   a. Whether the Defendant used any automatic telephone dialing system or an artificial or prerecorded voice to make telemarketing calls;

   b. Whether Defendant placed telemarketing calls without obtaining the recipients' valid prior express consent or, where applicable, prior express written consent;

   c. Whether Defendant placed telemarketing calls to persons who asked to be placed on Defendant's "Do Not Call" list;

   d. Whether Defendant had implemented, with due care, reasonable practices and procedures to prevent telemarketing calls to persons who asked to be placed on Defendant's "Do Not Call" list;

   e. Whether Defendant placed more than one call during any twelve-month period to any individuals whose number is listed on the national Do Not Call Registry.

   f. Whether the Defendant's violations of the TCPA were willful or knowing; and

g. Whether the Plaintiff and the class members are entitled to statutory damages as a result of the Defendant's actions.

54. Plaintiff's claims are based on the same facts and legal theories, and therefore are typical of the claims of class members.

55. Plaintiff is an adequate representative of each class and the subclass because her interests do not conflict with the interests of the classes, she will fairly and adequately protect the interests of the classes, and she is represented by counsel skilled and experienced in class actions, including TCPA class actions.

56. The actions of Defendant are generally applicable to the class as a whole and to Plaintiff.

57. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

58. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

59. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)

60. Plaintiff incorporates paragraphs 1-59 as if fully set forth herein.

61. It is a violation of the 47 U.S.C. § 227(b)(1)(A)(iii) to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called

party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a cellular telephone service…" 47 U.S.C. § 227(b)(1)(A)(iii).

62. Defendant's violation of the 47 U.S.C. § 227(b)(1)(A)(iii) resulted in, among other things, an invasion of Plaintiff's privacy and right to enjoy the full utility of her cellular device.

63. Defendant is directly and/or vicariously liable for the violations above.

64. As such, Defendant's calls were willful or, at a minimum, negligent. *See* 47 U.S.C. § 227(b)(3). Should the Court determine that Defendant's misconduct was willful and knowing, the Court may, pursuant to section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff.

**WHEREFORE**, Plaintiff, Natascha Aabbott, respectfully requests the following relief:

a. A declaration that Defendant's practices described herein violate 47 U.S.C. § 227(b)(1)(A)(iii);

b. An award of statutory damages in the maximum amount allowed by law,

c. An injunction requiring Defendant to cease all communications in violation of the TCPA; and

d. Such further and other relief the Court deems reasonable and just.

## COUNT II
### Violation of Delivery Restrictions, 47 U.S.C. 227(c)

65. Plaintiff incorporates paragraphs 1-59 is if fully set forth herein.

66. It is a violation of 47 U.S.C. § 227(c), for Defendant to place automated telemarketing calls promoting Martindale-Hubbell services on residential telephone lines listed on the national Do Not Call Registry.

67. Plaintiff and the Class Members received more than one such call in a twelve-month period.

68. Defendant's violation of 47 U.S.C. § 227(c), resulted in, among other things, an invasion of Plaintiff's privacy and right to enjoy the full utility of her cellular device.

69. Defendant is directly and/or vicariously liable for the violations above.

70. As such, Defendant's calls were willful or, at a minimum, negligent. *See* 47 U.S.C. § 227(c)(5). Should the Court determine that Defendant's misconduct was willful and knowing, the Court may, pursuant to section 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff.

**WHEREFORE**, Plaintiff, Natascha Aabbott, respectfully requests the following relief:

a. A declaration that Defendant's practices described herein violate 47 U.S.C. § 227(c),

b. An award of statutory damages in the maximum amount allowed by law,

c. An injunction prohibiting Defendant from calling or texting Plaintiff; and;

d. Such further and other relief the Court deems reasonable and just.

## COUNT III
*Violation of 47 U.S.C. § 227(c) and 16 C.F.R. § 310.4(b)(iii)(A)*

67. Plaintiff incorporates the paragraphs 1-59 as if fully set forth herein.

68. The Defendant violated the TCPA by calling, within a 12-month period, persons who asked to be placed on Defendant's "Internal Do Not Call" list.

69. At all times relevant, Defendant did not have reasonable practices and procedures in place to effectively prevent telephone solicitations in violation of the TCPA as evidenced by its calls to Plaintiff who repeatedly requested Defendant stop calling.

70. One of the purposes of Defendant's calls was to offer or promote goods or services for purchase or rental.

71. Defendant's calls caused Plaintiff and the "Internal Do Not Call" list class members concrete injuries including, but not limited to, invasion of their personal privacy; nuisance and disruption in their daily lives; reduction in cellular telephone battery life; and loss of use of their cellular telephones.

**WHEREFORE**, Plaintiff, Natascha Aabbott, respectfully requests the following relief:

a. A declaration that Defendant's practices described herein violate 47 U.S.C. § 227(c) and 16 C.F.R. § 310.4(b)(iii)(A);

b. An injunction prohibiting Defendant from calling or texting Plaintiff;

c. An award of statutory damages in the maximum amount allowed by law; and

d. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

72. Plaintiff demands a trial by jury

Date: January 21, 2019                     Respectfully submitted,

*s/ Scott D. Owens*
Scott D. Owens, Esq.
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com